# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| BENITO JESUS CARDENAS GARCIA, | § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL ACTION NO. H-12-3333 |
| ROBERT LACY, JR., *et al.*, | § § | |
| Respondents. | § | |

## **MEMORANDUM AND ORDER**

Petitioner Benito Jesus Cardenas Garcia filed this Petition for a Writ of Habeas Corpus and Immediate Release from Custody [Doc. # 1], challenging his prolonged pre-removal-order detention. The case is before the Court on the Motion to Dismiss Petition or Alternatively Motion for Summary Judgment ("Motion") [Doc. # 6] filed by Respondents Robert Lacy, Jr. (Houston Contract Detention Facility Warden), David Jennings (Immigration and Customs Enforcement Houston Field Office Director), and Eric H. Holder, Jr. (Attorney General of the United States). Petitioner filed an Opposition [Doc. # 17], Respondents filed a Reply [Doc. # 24], and Petitioner filed a Sur-Reply [Doc. # 27].

The Court has carefully reviewed the parties' arguments, the full record, and governing legal authorities. Based on this review, the Court **denies** Respondents'

Motion to Dismiss for lack of jurisdiction based on a failure to exhaust administrative remedies, and **grants** Respondents' Motion for Summary Judgment.

### I.      BACKGROUND

Petitioner is a citizen of Mexico. He entered the United States on December 18, 1988. On May 29, 1990, Petitioner entered a plea of guilty and was convicted in the United States District Court for the Southern District of Texas, McAllen Division, for attempting to gain illegal entry into the United States by declaring that he was a United States citizen. *See* Criminal Complaint, Exh. 2 to Motion. Petitioner was arrested for various other crimes between 1996 and 2009, many of them leading to convictions. Most recently, Petitioner pled guilty and was convicted of felony assault, and he was sentenced to a term of imprisonment of three years. *See* Exh. 3 to Motion.

Following his release from imprisonment on the assault conviction, Petitioner was taken into Department of Homeland Security ("DHS") custody on March 24, 2011. His first hearing before an Immigration Judge ("IJ") was April 21, 2011, at which time Petitioner requested a continuance. Petitioner appeared before an IJ on May 11, 2011, at which time the IJ found that Petitioner was removable. The IJ gave Petitioner a form to use to apply for cancellation of removal and to bring to the next hearing. On June 21, 2011, Petitioner appeared before the IJ and submitted his application for cancellation of removal ("Application for Cancellation"). At the next

hearing, on July 21, 2011, DHS advised the IJ that Petitioner's background check was in progress, and the hearing was rescheduled to August 30, 2011.  The hearing did not occur until October 4, 2011, at which time the IJ granted Petitioner's Application for Cancellation.

On October 19, 2011, DHS filed an appeal of the IJ's ruling.  The appeal was filed well before the deadline.  On November 16, 2011, the Board of Immigration Appeals ("BIA") issued a briefing schedule that required both parties to file briefs by December 7, 2011.  DHS requested and both parties received an extension of the briefing deadline to December 28, 2011.

Meanwhile, on December 20, 2011, Petitioner's case was included in the BIA Pro Bono Project.  This resulted in the extension of the briefing deadline to January 10, 2012.  DHS filed its brief on December 22, 2011, well before the deadline. Petitioner requested an extension of time to file his brief.  The request was granted, and the deadline for Petitioner's brief was extended to January 31, 2012.  Petitioner filed his brief by the extended deadline.  On March 19, 2012, the BIA reversed the IJ and remanded the case to the Immigration Court for consideration of Petitioner's claim of derivative citizenship.[1]  *See* BIA Decision, Exh. 20 to Motion.  In its

---

[1] Petitioner claimed that he has been a citizen of the United States since birth because his father was a U.S. citizen.

decision, the BIA noted that Petitioner has "multiple domestic-violence related convictions" and has been "convicted of numerous other crimes as well." *Id.* at 2.

A hearing on April 24, 2012 was continued by the IJ at the request of or with the consent of Petitioner. On May 15, 2012, DHS filed a written explanation as to why Petitioner was ineligible for derivative citizenship. *See* Position Statement, Exh. 22 to Motion. DHS explained that Petitioner was not entitled to derivative citizenship because even if his father was a U.S. citizen at birth, the documented evidence established that his father was not present in the United States for ten years prior to Petitioner's birth. *See id.*

On July 17, 2012, Petitioner filed a motion for the IJ to reopen the Application for Cancellation. The motion was denied for lack of jurisdiction, and the case was adjourned to August 14, 2012. *See* IJ Order, Exh. 26 to Motion.

On July 30, 2012, DHS filed a Form I-261 Additional Charges of Inadmissibility/Deportability. *See* Exh. 27 to Motion. In the Form I-261, DHS added a felony conviction in 1996 for burglary of a vehicle. It is undisputed that this additional charge, if sustained, would subject Petitioner to mandatory detention pursuant to 8 U.S.C. § 1226(c).

On August 13, 2012, Petitioner filed an N-600 Application for Certificate of Citizenship and requested that the removal proceedings be continued until the N-600

application was reviewed. The application was rejected as improperly filed. Petitioner refiled the N-600 application on October 9, 2012.

On August 15, 2012, Petitioner appealed the IJ's denial of his request to reopen his Application for Cancellation. The IJ required briefs be filed by September 25, 2012. On September 12, 2012, Petitioner requested and obtained an extension to October 16, 2012 to file his brief. Petitioner filed his brief by this extended deadline. On November 8, 2012, the BIA held that the IJ had jurisdiction to consider Petitioner's motion to reopen his Application for Cancellation, and remanded the matter to the IJ to review the evidence. *See* BIA Decision, Exh. 35 to Motion.

On December 11, 2012, Petitioner's N-600 application was denied because Petitioner failed to show that he satisfied the requirements for derivative citizenship. An amended ruling was issued December 19, 2012. *See* Notice of Decision and Amended Notice of Decision, Exh. 36 to Motion.

On December 12, 2012, DHS filed a request to advance Petitioner's case to expedite removal. On December 18, 2012, Petitioner filed an opposition to DHS's request to expedite.

On May 16, 2013, a hearing was held before the IJ. On May 21, 2013, the IJ issued his written decision. *See* Memorandum and Decision, Exh. C to Sur-Reply. The IJ denied Petitioner's motion to reopen the Application for Cancellation. The IJ

noted that Petitioner claimed that his wife had been injured, but Petitioner failed to disclose in his Application for Cancellation that he was married. Petitioner stated that he did not reveal his marriage because it was a common law marriage. The IJ noted also that Petitioner claimed to have a child who suffered from heart problems, but failed to list the child on the Application for Cancellation. Petitioner stated that he did not list the child because she has a different last name. The IJ also denied Petitioner's claim of derivative citizenship. The IJ sustained the charge of removability under § 237(a)(2)(A)(ii) based on Petitioner's conviction for two or more crimes involving moral turpitude, not arising out of a single scheme of criminal conduct. On June 5, 2013, Petitioner appealed the IJ's decision.

Meanwhile, on November 11, 2012, Petitioner filed this case alleging that his detention was unconstitutionally lengthy, and seeking immediate release from detention. Petitioner did not, however, serve Respondents until December 31, 2012. Respondents obtained, with Petitioner's consent, an extension to March 22, 2013, to respond to the Petition. *See* Order [Doc. # 5]. On April 15, 2013, Petitioner requested and obtained an extension to May 15, 2013, to file his opposition to Respondents' Motion. *See* Order [Doc. # 13]. On May 13, 2013, Petitioner requested and obtained another extension – to May 17, 2013. *See* Order [Doc. # 15]. Respondents filed their

Reply and, on June 20, 2013, Petitioner filed a Sur-Reply. Respondents' Motion has been fully briefed and is now ripe for decision.

## II.    MOTION TO DISMISS FOR LACK OF JURISDICTION

Respondents argue that Petitioner cannot challenge his mandatory detention status pursuant to § 1226(c) because he has not requested a hearing before the IJ pursuant to *In re Joseph*, 22 I. & N. Dec. 799 (BIA 1999) ("*Joseph* hearing"). Petitioner concedes that he has not requested a *Joseph* hearing, but asserts that he is not challenging his § 1226(c) status in this lawsuit. *See* Response, p. 20 ("The amended charges of removability that DHS brought against Mr. Cardenas bring him under this mandatory detention provision . . ..); p. 21 (Petitioner "is not challenging both the basis for his detention and a charge of removability [but instead] is assuming for these purposes that he falls within the category of individuals for whom detention is mandated by 8 U.S.C. § 1226(c) due to the amended removal charges levied against him by DHS and is challenging as unconstitutional the protracted length of detention while removal proceedings are pending."). Because Petitioner in this case is not challenging his mandatory detention status pursuant to § 1226(c), dismissal for failure to request a *Joseph* hearing is inappropriate. Respondents' Motion to Dismiss for lack of jurisdiction is denied.

## III.   MOTION FOR SUMMARY JUDGMENT

Respondents seeks summary judgment that, as a matter of law, Petitioner has failed to demonstrate that the duration of his detention is unconstitutional. It is undisputed that Petitioner has been detained in DHS custody since March 24, 2011.

### A.  Standard for Summary Judgment

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Crostley v. Lamar County, Texas*, 717 F.3d 410, 422 (5th Cir. 2013). The material facts in this case are well-documented and are not in dispute.

### B.  Analysis

The pre-removal-order statute, 8 U.S.C. § 1226, provides for the detention of any alien pending a decision in his removal proceeding. Section 1226(c) expressly provides for mandatory detention during removal proceedings of an alien who is removable based on the commission of certain enumerated offenses, including aggravated felonies. *See* 8 U.S.C. § 1226(c). There is no dispute in this case that Petitioner is being detained subject to § 1226(c). Petitioner here argues only that his detention is unconstitutional because of its duration.

The United States Supreme Court has held unequivocally that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). The Supreme Court reasoned that detention of deportable criminal aliens pending their removal proceedings "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 528. The Supreme Court noted that the alien in the *Demore* case was detained longer than the average length of time, but noted further that the alien "himself had requested a continuance of his removal hearing." *Id.* at 531.

In a concurring opinion in which no other Justice joined, Justice Kennedy suggested that an alien detained pursuant to § 1226(c) "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *See id.* at 532 (Justice Kennedy concurring). Justice Kennedy stated further that if there were "to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532-33 (Justice Kennedy concurring).

Based on Justice Kennedy's concurring opinion in *Demore*, the Third Circuit concluded that § 1226(c) "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." *Diop v. ICE/Homeland Security*, 656 F.3d 221, 231 (3rd Cir. 2011). The Third Circuit stated that there may come a point at which "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." *Id.* at 232. The Court noted that the inquiry will necessarily be fact specific and declined to establish a universal point at which detention will be considered unreasonable. *Id.* at 233. The Third Circuit agreed that "the reasonableness determination must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case." *Id.* at 234. The Third Circuit determined that the § 1226(c) detention for almost three years was unreasonable under the circumstances presented in the *Diop* case. *Id.* The Fifth Circuit has not adopted the Third Circuit's view of

§ 1226(c). Nonetheless, the Court will assume that § 1226(c) includes a limitation that the pre-removal-order detention must be of reasonable duration.

Based on the undisputed facts in this case, the Court concludes that Petitioner's detention since March 2011 is not unreasonable. Petitioner has an extensive criminal history, including criminal convictions for drug possession, assault, violating protection orders, and driving while intoxicated. Petitioner has been arrested at least twice and convicted at least once for failure to appear.

Regarding the duration of Petitioner's detention, the Court notes that much of the delay is attributable to Petitioner. The Court notes specifically that Petitioner opposed DHS's request to have the proceedings expedited. The Court notes also that some delay resulted from Petitioner's participation in the BIA Pro Bono Project. The Court does not imply that Petitioner has intentionally delayed the proceedings; the Court notes only that his repeated requests for continuances and other circumstances that were for his benefit have increased significantly the duration of his detention.

Justice Kennedy's concurring opinion in *Demore*, on which Petitioner bases his right to challenge the duration of his § 1226(c) detention, suggests that an "unreasonable or unjustified" delay might require inquiry into whether the detention was not for a purpose contemplated by the statute but "to incarcerate for other reasons." *Demore*, 538 U.S. at 532-33 (Justice Kennedy concurring). In this case,

there is nothing to suggest that DHS is using § 1226(c) to incarcerate Petitioner for any reason not contemplated by the statute. Indeed, DHS has steadfastly pursued its intent to remove Petitioner, and the removal proceedings appear to be reaching a final conclusion. Petitioner argues that it is uncertain how long the appeal may remain pending before a final decision. The Court anticipates that the BIA will issue its decision on Petitioner's current appeal as expeditiously as in the two prior appeals.[2] As a result, the Court concludes from the undisputed record that Petitioner's detention has not reached a point where it has become unconstitutional.

## IV.  CONCLUSION AND ORDER

Petitioner concedes for purposes of this proceeding that he is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). As a result, Petitioner is not required to exhaust administrative remedies required before challenging the § 1226(c)

---

[2]The first appeal, challenging the IJ's order granting Petitioner's Application for Cancellation, was filed by DHS on October 19, 2011. The briefing deadline was extended from November 16, 2011 to January 31, 2012 at Petitioner's request. The BIA issued its ruling on March 19, 2012, five months after the appeal was filed and less than three months after briefing was completed.

The second appeal, challenging the IJ's denial of Petitioner's motion to reopen his Application for Cancellation, was filed by Petitioner on August 15, 2012. The briefing deadline was extended from September 25, 2012 to October 16, 2012 at Petitioner's request. The BIA issued its decision on November 8, 2012, less than three months after the appeal was filed and less than one month after briefing was completed.

detention. The Court has jurisdiction over the issues asserted in this proceeding, and dismissal for lack of jurisdiction is not appropriate.

The removal proceedings have been and continue to be steadily progressing and are currently nearing a final conclusion. The length of Petitioner's pre-removal-order detention is not unconstitutional, particularly in light of Petitioner's own requests for extensions of time. Accordingly, it is hereby

**ORDERED** that Respondents' Motion to Dismiss for lack of jurisdiction [Doc. # 6] is **DENIED** and their Motion for Summary Judgment [Doc. # 6] is **GRANTED.** It is further

**ORDERED** that the Petition for Writ of Habeas Corpus and for Immediate Release from Custody is **DENIED**. The Court will issue a separate final order.

SIGNED at Houston, Texas this 19th day of **July, 2013.**

Nancy F. Atlas
United States District Judge